UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBRA S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03736-SEB-TAB |
| ) | |
| ANDREW M. SAUL Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff contests the Administrative Law Judge's decision on several fronts. First, Plaintiff argues that the ALJ failed to properly account for her moderate difficulties with concentration, persistence, and pace. Second, she argues that the ALJ's Residual Functional Capacity determination was not supported by substantial evidence. Third, Plaintiff contends that the ALJ did not satisfy the requirement of SSR 00-4p, alleging a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. Finally, Plaintiff challenges the ALJ's credibility assessment of Plaintiff. For the reasons set forth below, the Magistrate Judge recommends that Plaintiff's request for remand be denied, because the ALJ's decision was supported by substantial evidence and satisfied all SSR requirements.

## II.     Background

Plaintiff filed an application for a period of disability and disability insurance benefits. The Social Security Administration denied her claims initially and upon reconsideration. After a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 404.1520(a) and 416.920(a). First, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. Subsequently, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: depression, post-traumatic stress disorder, anxiety, and alcohol abuse. The ALJ concluded that none of Plaintiff's additional complaints or impairments, alone or in combination, resulted in functional limitations lasting at least 12 consecutive months.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] could understand, remember, and carry out no more than simple, routine tasks with no strict quotas (no work where someone is checking up to see if she is on pace with set quota(s), goal(s), or with other employees) but she can do work where performance is measured by what is completed by the end of the workday. She could have no public contact and no more than occasional contact with co-workers and supervisors. [Plaintiff] could not perform work requiring teamwork situations (not required to work with others to complete some job task(s)) but is able to work independently.

[Filing No. 8-2, at ECF p. 24.]

2

Next, at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work.  Finally, after taking into consideration Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that jobs existed in significant numbers in the national economy that Plaintiff could perform.  The ALJ cited to the vocational expert's testimony that given all these factors, an individual would be able to perform the job requirements of "representative occupations" such as hand packer, assembler, and sorter.  [Filing No. 8-2, at ECF p. 29.]  The ALJ concluded that Plaintiff was not disabled.

### III.     Discussion

Plaintiff contends that several of the ALJ's findings were not supported by substantial evidence or failed to properly account for evidence in the record.  The Court reviews an ALJ's decision and will uphold it "if the correct legal standards were applied and supported with substantial evidence.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations and quotation marks omitted).

#### 1.     Moderate Difficulties with Concentration, Persistence, and Pace

Plaintiff first argues the ALJ's determination of her RFC and hypothetical question to the vocational expert did not properly account for Plaintiff's moderate difficulties with concentration, persistence, and pace.  "The ALJ must explicitly account for all a claimant's limitations in her hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record."  *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019).  The Seventh Circuit recently emphasized that

> both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, and pace.  As a matter of form, the ALJ need not put the questions to the VE in specific terms—

3

> there is no magic words requirement.  As a matter of substance, however, the ALJ must ensure that the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform.

*Crump v. Saul*, __ F.3d __, __, 2019 WL 3451276, at *3 (7th Cir. 2019) (internal citations and quotation marks omitted).

In this case, the ALJ found that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace.  The ALJ addressed this limitation by encompassing nonexertional limits with Plaintiff's assessed RFC level, including that Plaintiff:

> could understand, remember, and carry out no more than simple, routine tasks with no strict quotas (no work where someone is checking up to see if she is on pace with set quota(s), goal(s), or with other employees) but she can do work where performance is measured by what is completed by the end of the workday. She could have no public contact and no more than occasional contact with co-workers and supervisors.  [Plaintiff] could not perform work requiring teamwork situations (not required to work with others to complete some job task(s)) but is able to work independently.

[Filing No. 8-2, at ECF p. 24.].  And at the hearing, the ALJ asked the VE:

> Consider an individual such who is [Plaintiff's] age, education, and work experience who can understand, remember, and carry out simple, routine tasks.  Cannot be required to engage in strict quotas, meaning no work where they are being checked to come and see if they're keeping throughout the workday so they're keeping up a quota, a goal, on pace with other employees, but is capable of doing work where their performance is measured by what is completed by the end of the workday.  No public contact for work related purposes and no more than occasional contact with coworkers and supervisors.  And no work requiring team work situations meaning they have to work with others to complete the same job tasks, but is capable of working independently.  Any such jobs an individual can perform?

[Filing No. 8-2, at ECF p. 59.]

Plaintiff argues that the RFC and hypothetical question both fail to properly address Plaintiff's concentration-related limitations.  However, Plaintiff cites no medical evidence in the record indicating that Plaintiff was more limited than the ALJ assessed.  Plaintiff's argument

4

focuses solely on prior case law. The Court reviews an ALJ's decision on a case-by-case basis. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1157 (2019).

Plaintiff correctly notes that the 7th Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). *See also Crump*, __ F.3d __, 2019 WL 3451276, at *3 ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace."). For instance, in *DeCamp*, the Seventh Circuit found that the ALJ erred because "[t]he ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by [state-agency physician] Dr. Pape." *DeCamp*, 916 F.3d at 675. The Court reasoned:

> The ALJ opted instead to limit DeCamp to "unskilled work" with no "fast-paced production line or tandem tasks." We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.

*Id*. At 675-76. *See also Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations.").

Here, by contrast, the ALJ did not omit any documented limitations. As noted above, Plaintiff cites no medical evidence indicating she was more limited than assessed. The ALJ did more than use the catch-all term. The ALJ, after conducting a thorough discussion of Plaintiff's

5

mental health history, treatment, and alleged symptoms, used the catch-all term and elaborated further, including restrictions that Plaintiff could not have strict quotas, public contact, or perform work requiring teamwork. [Filing No. 8-2, at ECF p. 24.]

When noting Plaintiff's moderate limitation in concentration, persistence, and pace, the ALJ found that Plaintiff had:

> the concentration, persistence, and pace to handle funds, drive, care for pets, go out alone, live alone, provide care to an elderly individual, read a lot, paint and do crafts such as stained glass, follow a schedule to get to appointments, go to church, walk/feed dog, provide care for an ill acquaintance, care for her grandchildren occasionally, and care for her pets.

[Filing No. 8-2, at ECF p. 23.]  Additionally, the ALJ found that Plaintiff's ability to sustain concentration was "routinely described as fair or within normal limits and normal based on her general answering of questions."  [Filing No. 8-2, at ECF p. 23.]

The ALJ also found that Plaintiff had a mild limitation in understanding, remembering, or applying information.  The ALJ noted Plaintiff's subjective complaints of memory issues and noted that Plaintiff quit her nursing class.  But the ALJ found no evidence of a learning disorder or intellectual disorder.  The ALJ cited to clinical psychologist Linda S. Kranitz's conclusion that the results of neuropsychological testing did not support a diagnosis related to cognitive impairment. [Filing No. 8-2, at ECF p. 22 (citing Exhibit 8F, p. 29 [Filing No. 8-14, at ECF p. 42])].  The ALJ also referenced Plaintiff's ability to maintain an active lifestyle, including her ability to live alone, travel, and live in different parts of the country since her alleged onset date. The ALJ likewise found that Plaintiff had a mild to moderate limitation with regard to interacting and relating with others.  In reaching this finding, the ALJ weighed Plaintiff's fear of infection due to her compromised immune system with her actions of continuing to be in public places such as church, stores, and restaurants.  The ALJ also accounted for this concern by limiting her

to no public contact and no more than occasional contact with co-workers and supervisors. Additionally, while the ALJ found Plaintiff had a mild limitation with regard to adapting and managing oneself, the ALJ referenced Plaintiff's testimony and weighed it against the lack of evidence indicating Plaintiff struggled to control her emotions. Therefore, the ALJ's RFC and hypothetical question adequately addressed Plaintiff's moderate limitation in concentration, persistence, and pace.

Moreover, even if the ALJ's RFC assessment or hypothetical question was flawed, any error was harmless. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). In *Jozefyk*, the ALJ found that the plaintiff's memory and concentration were "slightly impaired," but the plaintiff cited no evidence that he was unable to perform simple, routine, and repetitive tasks in light of those limitations. *Id.* Here, as in *Jozefyk*, Plaintiff has not indicated what type of work restrictions—beyond what the ALJ implemented—might address her limitations in concentration, persistence, and pace. Thus, any shortcoming of the ALJ's analysis was harmless. *Id.* ("Because Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand.").

### 2. RFC

Next, Plaintiff challenges the ALJ's RFC determination. Plaintiff argues that the ALJ failed to account for Plaintiff's ability to stand and walk during an eight-hour workday and Plaintiff's compromised immune system. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling. However, a determination need not contain

a complete written evaluation of every piece of evidence[.]" *Murphy v. Colvin*, 759 F.3d 811, 817-18 (7th Cir. 2014) (internal citations, quotation marks, and brackets omitted).

Regarding Plaintiff's ability to stand and walk, Plaintiff contends the ALJ did not properly address the intensity, persistence, and limiting effects of Plaintiff's symptoms related to her bilateral foot disorder. Plaintiff argues that the ALJ should have included additional limitations in her RFC assessment due to Plaintiff's bilateral foot surgeries and associated pain.

The ALJ found:

> While there is reference to a foot disorder and left foot complaints, there is no documented evidence that these issues lasted for a period of 12 consecutive months. The claimant also noted to have right foot osteoarthritis, but there are no documented physical abnormalities. There is also documented evidence of a toe cyst and mild-moderate degenerative spurring of the first MTP/MTS joints with subchondral reactive marrow changes and small first MTP joint effusion, but there is no evidence of any associated physical functional limitations. Rather, upon examination, the claimant often exhibited 5/5 muscle strength to all groups, and normal ambulation.

[Filing No. 8-2, at ECF p. 19-20.] Plaintiff takes issue with the ALJ's finding that there were no documented physical abnormalities with Plaintiff's right foot and that there is no documented evidence that the issues lasted for a period of 12 consecutive months. Plaintiff notes that she began complaining about pain in July 2014 and underwent surgery in 2015 and 2016 to remove growths from each foot, as well as other visits with her physicians complaining of the foot pain and issues that preceded the surgeries. Plaintiff fails, however, to cite to any medical evidence with the opinion that Plaintiff had any standing or walking limitations. *See, e.g., Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010) ("The ALJ found it illuminating and persuasive on its face that none of [the plaintiff's] doctors opined that she was unable to work."). Thus, even if the ALJ's findings misstate the timeline of events or documented treatments, Plaintiff has not shown harmful error. *See, e.g., Jozefyk*, 923 F.3d at 498.

As for Plaintiff's immune system, Plaintiff testified at the hearing that she had 18 infections in the last year and a half. [Filing No. 8-2, at ECF p. 47.] The ALJ mentioned in her decision Plaintiff's history of leukemia/lymphoma and Plaintiff's testimony that she gets infections often. The ALJ elaborated that Plaintiff stated these infections occur once a month, twice a month, maybe every other month, and could last 10-21 days, yet the record lacked evidence of such frequency or severity. [Filing No. 8-2, at ECF p. 26.] While there are references to infections in the record, the majority of the references are to physician notes summarizing Plaintiff's stated symptoms and medical history, rather than treatment records for any underlying infection. Nevertheless, even assuming Plaintiff's testimony was accurate, Plaintiff again cites no medical source that concluded Plaintiff had any work-related limitations due to infections. Accordingly, the ALJ's RFC determination is supported by substantial evidence.

### 3. SSR 00-4p

Plaintiff also contends that the ALJ failed to satisfy the requirements of SSR 00-4p, which sets forth a policy interpretation ruling. "SSR 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether the testimony is consistent with the Dictionary of Occupational Titles." *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). *See also Brown v. Colvin*, 845 F.3d 247, 254-55 (7th Cir. 2016) ("[I]f a vocational expert's testimony appears to conflict with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict, and . . . a claimant's failure to object during a hearing cannot excuse an ALJ's failure to do so.") (internal citation and quotation marks omitted).

9

Plaintiff argues that the VE's testimony that Plaintiff could perform work as a hand packer, assembler, and sorter conflicted with the descriptions of those positions in the DOT. More specifically, Plaintiff contends that the RFC limitations of no strict quotas, pace, and teamwork conflicted with the description for the jobs identified at the hearing. Plaintiff also claims that all occupations in the DOT require the worker to work at a set pace, citing generally to the DOT as a whole without indicating where such restriction is actually stated. Defendant counters that there was no conflict in this case because the DOT job descriptions for the jobs identified as positions Plaintiff could perform in light of her assessed RFC were silent on quota versus performance measured by work completed at the end of the day and on teamwork. *See, e.g., Zblewski v. Astrue*, 302 Fed. App'x 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand objections, it is not apparent that the testimony conflicts with the DOT."). The Court reviewed the job descriptions and agrees that they are silent. *See* DICOT 920.687-066, Carrier Packer, 1991 WL 687977 (2016); DICOT 739.687-186, Traverse-Rod Assembler, 1991 WL 680218 (2016); DICOT 929.687-022, Laborer, Salvage, 1991 WL 688172 (2016). Therefore, no apparent conflict is present. Accordingly, the ALJ did not err at step five by relying on the VE's testimony.

### 4. Credibility Assessment

Finally, Plaintiff claims that the ALJ's credibility assessment of Plaintiff was not supported by substantial evidence. Plaintiff argues that "the ALJ's RFC determination was based upon an unreasonable and unsupported credibility assessment with regard to Plaintiff's subjective symptoms of fatigue, pain, frequent infections, recurrent bladder infections, urinary frequency and other symptoms." [Filing No. 11, at ECF p. 34.]

The ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptom; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" [Filing No. 8-2, at ECF p. 24.] "An ALJ is in the best position to determine the credibility of witnesses, and we review that determination deferentially. We overturn a credibility determination only if it is patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (internal citations omitted). Here, the ALJ's evaluation was not patently wrong.

In assessing Plaintiff's credibility, the ALJ noted that Plaintiff engaged in activities that undermined her claims, including travelling and living in different parts of the country since her alleged onset date. The ALJ also included in her findings that Plaintiff reported she was doing better while on medication for her symptoms of depression and anxiety and denied any adverse side effects. [Filing No. 8-2, at ECF p. 25-26]. Plaintiff does not specifically contest the factors raised by the ALJ but rather argues that the ALJ did not adequately explain the weight she gave Plaintiff's statements regarding her symptoms or the limiting effects of the same. The ALJ was not required to accept Plaintiff's self-reported symptoms without question, and Plaintiff has not established that the ALJ's assessment was patently wrong.

## IV.   Conclusion

For these reasons, the Commissioner's decision should be affirmed. The Magistrate Judge recommends that the Court deny Plaintiff's brief in support of appeal and request for remand. [Filing No. 11.]

Any objection to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/30/2019

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email